IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ARTHUR HILL,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )          1:13CV153
                                )
EQUIFAX INFORMATION SERVICES,   )
LLC., BANK OF AMERICA,          )
                                )
          Defendants.           )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motions to Substitute Party Defendant (Docket Entry 67), for Leave to Amend and Join Allstate as Party Defendant (Docket Entry 68), and to Substitute His Proposed Third Amended Complaint (Docket Entry 73).[1] For the reasons that follow, the Court will grant Plaintiff's Motion to Substitute Party Defendant,[2] but will deny his other two instant Motions.[3]

---

[1] Plaintiff's Motion to Substitute His Proposed Third Amended Complaint effectively constitutes yet another request to amend his pleading(s), i.e., to file a fourth amended complaint. This Court thus will refer to such matters accordingly.

[2] Because of the lack of opposition, the Court treats Plaintiff's Motion to Substitute Party Defendant as generally subject to granting as a matter of course under Local Rule 7.3(k). No reason appears to depart from that general rule.

[3] For reasons stated in Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to the instant Motions. See also Everett v. Prison Health Servs., 412 Fed. Appx. 604, 605 & n.2 (4th Cir. 2011) ("Everett moved for leave to amend her complaint ... to add Appellee Prison Health Services, Inc. ('PHS') as a defendant based on information obtained during discovery, and to add a state-law claim of medical malpractice against PHS. After a hearing, the

BACKGROUND

Plaintiff's proposed third amended complaint seeks to assert new state law claims based on allegations that Defendant Equifax Information Services, LLC. ("Equifax") reported an unauthorized Bank of America credit card on Plaintiff's credit report. (Docket Entry 68-1, ¶¶ 8-24.) Plaintiff alleges that his wife owned a Bank of America credit card, and Defendant Bank of America[4] listed Plaintiff on the card as an authorized user without his consent. (Id., ¶¶ 19-20.) Plaintiff asserts that he disputed his liability for the credit card with Defendant Equifax three times prior to this litigation. (Id., ¶ 17.) Despite these disputes, Defendant Equifax allegedly refused to remove the credit card from Plaintiff's credit report. (Id., ¶ 23.) Plaintiff alleges he contacted Defendant Bank of America on three separate occasions to discuss the credit card, and ultimately Plaintiff had himself removed from the credit card – confirmed by a letter from Defendant Bank of America. (Id., ¶¶ 11, 17-20.) Both credit reporting

---

magistrate judge denied Everett's motion. Everett timely objected, thereby preserving the issue for review by the district court.... [T]he district court could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law.' Fed.R.Civ.P. 72(a); 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp.2010).").

[4] Plaintiff's proposed third amended complaint substitutes FIA Card Services, N.A. as a Defendant for Bank of America, but Plaintiff refers to FIA as Bank of America in the body of the pleading. For purposes of this Memorandum Opinion, the Court will use the name "Bank of America" to refer to said Defendant.

agencies Trans Union LLC ("Trans Union") and Experian removed the Bank of America credit card from Plaintiff's credit reports as requested, but Defendant Equifax refused to do so. (Id., ¶ 23.)

As for the proposed claims against Allstate, Plaintiff's allegations stem from Allstate supposedly improperly requesting his credit report. (Id., ¶¶ 100-11.) Plaintiff alleges that, in May of 2012, he learned that Allstate had made two inquiries to Trans Union regarding his credit report. (Id., ¶¶ 101-02.) Plaintiff allegedly contacted Allstate to determine why Allstate had inquired about his credit information. (Id., ¶ 104.) According to Plaintiff, after contacting Allstate, he checked his credit report again and found that Allstate had acquired his credit file from Trans Union again. (Id., ¶ 105.) Plaintiff contends Allstate improperly pulled his credit report as part of its defense efforts in a lawsuit Plaintiff filed against one of Allstate's insureds. (Id., ¶¶ 107-11.)

Plaintiff filed this action, pro se, in February of 2013. (Docket Entry 1.) In his first complaint, Plaintiff sued three defendants for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. (Docket Entry 1). Subsequently, Plaintiff amended his complaint once as a matter of course (Docket Entry 6), and then again without leave of court (Docket Entry 11). United States District Court Judge Catherine C. Eagles accepted Plaintiff's second amended complaint *nunc pro tunc*.

(Docket Entry 55.) In the process of amending his pleading(s), Plaintiff has added several defendants and claims and, although the number of defendants and claims have varied throughout this litigation (due to both voluntary and involuntary dismissals), Plaintiff currently only has claims left against Defendants Bank of America and Equifax.[5] Plaintiff's Second Amended Complaint asserts claims for violations of the FCRA and the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), as well as for a civil conspiracy. (Docket Entry 11, ¶¶ 52-84.)

This Court set forth the scheduling order for the parties in a text order. (Text Order dated Apr. 8, 2014.) That scheduling order included a deadline for the parties to submit any motions to seek leave to amend or add parties by May 23, 2014, along with a warning that a late submission would result in application of both Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4). (See id.) On May 23, 2014, Plaintiff submitted two motions to the Court. (Docket Entries 67, 68.) The first, Plaintiff's instant Motion to Substitute Party Defendant, sought to substitute FIA Card Services, N.A. for Defendant Bank of America as the proper defendant. (Docket Entry 67.) The second, Plaintiff's instant Motion for Leave to Amend and Join Allstate as a Party Defendant, sought to

---

[5] During the pendency of the instant Motions, Plaintiff filed a Consent Motion to Dismiss all claims against Trans Union. (Docket Entry 80.) Judge Eagles granted that Motion and dismissed Plaintiff's claims against Trans Union. (Docket Entry 81.)

4

amend his pleadings via a third amended complaint.  (Docket Entry 68.)  Plaintiff's proposed third amended complaint affected three changes.  First, it included Allstate as an additional defendant and added claims against Allstate.  Second, the proposed third amended complaint included new claims against Trans Union relating to alleged improper credit report disclosures to Allstate.  Finally, the proposed third amended complaint added claims against Defendant Bank of America - for civil conspiracy and for violation of the NCUDTPA.

Defendant Bank of America objected to Plaintiff's Motion for Leave to Amend and Join Allstate as a Party Defendant and argued that the proposed third amended complaint failed as futile for two reasons: 1) that the FCRA preempts the NCUDTPA and civil conspiracy claims; and 2) that Plaintiff failed to adequately plead his new claims.  (Docket Entry 71.)  Plaintiff replied to Defendant Bank of America's objections twofold.  (Docket Entries 72, 73.)  First, Plaintiff filed a Reply arguing that the FCRA does not preempt his claims.  (Docket Entry 72.)  Second, Plaintiff submitted his instant Motion to Substitute His Proposed Third Amended Complaint, in which he proffered a fourth amended complaint.  (Docket Entry 73.)  Plaintiff requested that the proposed fourth amended complaint replace his proposed third amended complaint in order to overcome Defendant Bank of America's objections that he had failed to state a claim.  (Id.)  Plaintiff submitted the proposed fourth

amended complaint, which sought to add further factual allegations, but not additional claims or parties, on July 2, 2014, over a month past the scheduling order deadline. (Id.) Defendant Bank of America opposed the proposed fourth amended complaint (Docket Entry 77), and Plaintiff has not replied (see Docket Entries dated July 7, 2014, to present).

DISCUSSION

Typically, courts should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). This standard provides the Court with discretion on whether to allow an amendment, but not without limits. Foman v. Davis, 371 U.S. 178, 182 (1962). The United States Court of Appeals for the Fourth Circuit has elaborated that a court may properly deny leave to amend when "'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile if the proposed amended complaint would not survive a motion to dismiss. Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

The motion to dismiss standard requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "'[W]holly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.'" Doe v. Virginia Dep't of State Police, 713 F.3d 745, 754 (4th Cir. 2013) (quoting Catholic League for Religious and Civil Rights v. City and Cnty. of S.F., 624 F.3d 1043, 1080 (9th Cir. 2010)). The Court must also draw upon "'its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Moreover, although the Supreme Court has reiterated the importance of affording pro se litigants the benefit of liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Fourth Circuit has "not read Erickson to undermine [the] requirement that a pleading contain more than labels and conclusions[,]" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint).

A motion to amend that seeks to add additional parties implicates both Federal Rules of Civil Procedure 15 and 20. Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001) ("[A] court determining whether to grant a motion to amend to join additional plaintiffs must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)."); see also Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007) (affirming the denial of the plaintiffs' motions to amend and add a defendant,

7

citing Hinson); Whitfield v. Jenkins, No. 5:10-CT-3151-D, 2012 WL 214467, at *2 (E.D.N.C. Jan. 24, 2012) (unpublished) (analyzing a motion to amend to include new defendants under Rule 20). Finally, if a litigant seeks leave to amend after the applicable deadline in a scheduling order, then Federal Rule of Civil Procedure 16(b)(4) requires a demonstration of good cause. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).

Because Plaintiff has submitted two different amended complaints, at different times relative to the applicable scheduling order deadline, and has sought to add a party as well, a variety of different analyses must apply. Plaintiff timely submitted the proposed third amended complaint, so only Rule 15(a)(2) (and Rule 20, as concerns the addition of a party) applies thereto, but Plaintiff submitted the proposed fourth amended complaint after the scheduling order's deadline, so both Rules 15(a)(2) and 16(b)(4) govern it. In regards to the proposed third amended complaint, the applicable joinder rules preclude the addition of Allstate as a defendant. Further, the FCRA preempts the NCUDTPA claim, and the civil conspiracy claim fails to allege factual matter showing a common agreement and a sufficient injury. As to the proposed fourth amended complaint, Plaintiff has failed to show good cause for leave to amend after the scheduling order deadline, and his claims remain futile.

*A. Third Amended Complaint*

   *i. Allstate*

Because Plaintiff seeks to add a new defendant (Allstate), the Court must consider the joinder requirements of Rule 20 as part of the Rule 15 analysis. See Hinson, 239 F.3d at 618; Whitfield, 2012 WL 214467, at *2. Rule 20 permits the joinder of defendants when "(A) any right to relief is asserted against [Defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all [D]efendants will arise in the action." Fed. R. Civ. P. 20(a)(2) (emphasis added). This standard requires a case by case analysis, designed to permit the trial of all reasonably related claims in one proceeding. See Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983).

Plaintiff's proposed third amended complaint raises entirely new and separate allegations against Allstate related to occurrences where, allegedly, Allstate improperly requested Plaintiff's credit report from Trans Union. (Docket Entry 68-1, ¶¶ 100-11.) Plaintiff's allegations against Allstate bear no relation to Plaintiff's disputes with Defendants Bank of America or Equifax. (Compare Docket Entry 68-1, ¶¶ 8-24 with 100-11.) In fact, now that Trans Union no longer remains a defendant (see Docket Entry 81), no connection whatsoever exists between Defendants and

9

Allstate.  As such, Plaintiff does not assert a right to relief against all Defendants that arises from the "same transaction, occurrence, or series of transactions or occurrences[,]" so Rule 20(a)(2) does not permit Allstate's joinder.  See Whitfield, 2012 WL 214467, at *2 ("Rule 20(a)(2) does not provide a license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated.").  Accordingly, the Court denies Plaintiff's request to join Allstate as a Defendant.

 *ii. The NCUDTPA claim*

"The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry."  Ross v. F.D.I.C., 625 F.3d 808, 812 (4th Cir. 2010).  In order to ensure a standard set of regulations and to avoid a "patchwork system of conflicting regulations" for the consumer reporting industry, Congress enacted 15 U.S.C. § 1681t(b).  Id. at 813.  Section 1681t(b)(1)(F) provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."  This statute preempts state statutory claims against those who furnish information to credit reporting agencies.  See Ross, 625 F.3d at 813 ("Because Ross's NCUDTPA claim seeks to use § 75-1.1 as a 'requirement or prohibition' under North Carolina law concerning 'subject matter regulated under section 1681s-2,' it

is squarely preempted by the plain language of the FCRA."); Johnson v. MBNA Am. Bank Nat'l Ass'n., No. Civ. 1:05CV00150, 2006 WL 618077, at *6-9 (M.D.N.C. Mar. 9, 2006) (unpublished) (holding that section 1681t preempts only state statutory claims, and granting summary judgment against plaintiff's NCUDTPA claim as preempted).

Just like in Ross and Johnson, the plain language of section 1681t(b)(1)(F) preempts Plaintiff's proposed NCUDTPA claim.[6] Accordingly, Plaintiff's proposed NCUDTPA claim is futile.

*iii. Civil Conspiracy*

In North Carolina, a claim for civil conspiracy must show "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" Strickland v. Hedrick, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (quoting Privette v. University of N.C., 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989)). In this case, the facts do not suggest a coordinated effort or common agreement to injure Plaintiff, and thus the Plaintiff has failed to state a claim upon which relief can be granted. See Henderson v. LeBauer, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 ("The existence of a conspiracy requires proof

---

[6] Plaintiff previously conceded that preemption might bar his NCUDTPA claim against former Defendant Dell Financial Services. (See Docket Entry 52 at 11.) The Court (per Judge Eagles) analyzed the issue, accepted his concession, and dismissed the claim. (See Docket Entry 55 at 7-8).

11

of an agreement between two or more persons.").

For example, Plaintiff alleges that, while disputing his liability on the credit card, Defendant Bank of America confirmed Plaintiff's liability to Defendant Equifax, and that Defendant Equifax continued to report it on his credit. (Docket Entry 68-1, ¶¶ 16, 23.) Although these allegations assert that each party harmed Plaintiff – Defendant Bank of America by wrongfully reporting him liable and Defendant Equifax by wrongfully displaying that information on his credit report – the conduct does not necessarily give rise to an inference of a common agreement to harm Plaintiff. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007) (holding that in regard to a violation of the Sherman Act: "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy . . . .").

Further, in other respects, Plaintiff's allegations demonstrate that Defendants Bank of America and Equifax actually worked against each other. Plaintiff admits that he requested Defendant Bank of America to remove him from the credit card, and that Defendant Bank of America complied. (Docket Entry 68-1, ¶ 11.) Despite that removal, Plaintiff alleges that Defendant Equifax continued to report him as an authorized user. (Id., ¶ 14-

15.)  Later, after the closing of that credit card account,[7] Defendant Equifax and only Defendant Equifax continued to report the card on Plaintiff's credit report.  (Id.)  This activity does not indicate a common agreement.

Moreover, Plaintiff alleges that only one Defendant caused the injury, i.e., that either (1) Equifax did not send Defendant Bank of America the credit card dispute to verify the information, or (2) Defendant Equifax did send the dispute and Defendant Bank of America did not conduct a reasonable investigation.  (Id., ¶ 16.) Accordingly, any wrongful activity occurred at the hands of one party and not both – either Defendant Bank of America never received the dispute, and the fault lies with Defendant Equifax, or Defendant Bank of America received the dispute and provided false information, such that Defendant Bank of America bears fault.  Such circumstances refute the notion that a common agreement existed between Defendants Bank of America and Equifax to injure Plaintiff.

Beyond the foregoing, Plaintiff offers only conclusory allegations of a conspiracy.  For example, Plaintiff states that "Defendants Equifax and [Bank of America] have engaged in a conspiracy to injure consumers such as the Plaintiff by agreement[,]" and "[t]he wrongful acts done by Equifax and [Bank of America] in furtherance of their conspiracy injured the Plaintiff."

---

[7] Plaintiff does not state who closed the account.  (Docket Entry 68-1, ¶ 15.)

13

(Id., ¶¶ 172, 173.) These allegations lack sufficient factual support, as seen above, to rise above the level of speculative. Taken as a whole, the proposed third amended complaint does not plausibly suggest a common agreement to injure Plaintiff. Absent a common agreement, no conspiracy claim can proceed.

In addition, Plaintiff has failed to allege that he suffered any injury as a result of the conspiracy. Plaintiff asserts only that the conspirators <u>intended</u> he suffer damage to his credit, reputation, or receive higher costs for financing than he otherwise would have, without alleging factual matters showing that he actually suffered any of those injuries. (Id., ¶ 176.) Because Plaintiff has not alleged that he actually suffered an injury, he lacks a crucial element of a conspiracy, and has failed to state a claim. See <u>Dove v. Harvey</u>, 168 N.C. App. 687, 691, 608 S.E.2d 798, 801 (2005) ("'[U]nless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone.'" (quoting <u>Henderson</u>, 101 N.C. App. at 260, 399 S.E.2d at 145 (1991))).

In sum, Plaintiff's allegations do not sufficiently nudge his proposed conspiracy claim across the line from conceivable to plausible. See <u>Twombly</u>, 550 U.S. at 570. Accordingly, Plaintiff's proposed civil conspiracy claim is futile.

*B. Fourth Amended Complaint*

Plaintiff has failed to show good cause sufficient to justify allowing him to amend his pleadings upon motion made after the applicable scheduling order deadline. "[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp., 535 F.3d at 298. The burden of showing good cause falls on the moving party. Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987). This good cause analysis focuses on the movant's diligence. West Virginia Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc., 200 F.R.D. 564, 567 (S.D. W. Va. 2001).

In this case, Plaintiff has made no showing of good cause. Rather, Plaintiff has attempted to unilaterally circumvent the scheduling order by requesting his proposed fourth amended complaint replace his proposed third amended complaint in order to overcome Defendant Bank of America's initial objections. (See Docket Entry 73 at 5.) Plaintiff neither has given any reason for failing to include his new factual allegations in his proposed third amended complaint, nor has he shown any reason for his failure to obtain this information prior to the deadline in the scheduling order. (Id.) Plaintiff has not demonstrated good cause sufficient for this Court to grant his motion to amend his complaint for the fourth time.

Having failed to show good cause, this Court need not evaluate

15

whether Plaintiff's proposed last amendment meets Rule 15(a)(2)'s standard. See Forstmann, 114 F.R.D. at 85 ("If the party shows 'good cause' to the court's satisfaction, the party must then demonstrate that leave to amend is proper under Federal Rule of Civil Procedure 15."). However, even assuming that good cause existed, a review of the proposed fourth amended complaint proves that the amendment is futile. First, the FCRA still preempts the NCUDTPA claim. Second, Plaintiff has still failed to state a claim for civil conspiracy.

As mentioned above, a civil conspiracy claim requires evidence of a resulting injury to the plaintiff. Privette, 96 N.C. App. at 139, 385 S.E.2d at 193. Plaintiff's proposed third amended complaint failed to adequately allege that he suffered an injury as a result of Defendants' actions, and the proposed fourth amended complaint fails similarly. The proposed fourth amended complaint states:

> Equifax and [Bank of America] knew that taking adverse action against the owner and then reporting the credit card account with a balance that exceeded the credit limit would give the appearance the Plaintiff was irresponsibly managing his credit, lower his credit score, damage his credit reputation and portray him as a high risk to creditors. . . . Equifax and [Bank of America] knew that reporting the account negatively and continuing to report the account adversely would lower the Plaintiff's credit score and cause him to pay higher costs for financing or not seek financing due to the negative reporting.

(Docket Entry 73, ¶¶ 27-28).

These allegations focus on what might have happened and not on what did happen. Absent the attendant injury, no claim for civil

16

conspiracy can proceed.  See Dove, 168 N.C. App. at 691, 608 S.E.2d at 801.  As such, the civil conspiracy claim in the fourth amended complaint is futile.

## CONCLUSION

The additional claims in Plaintiff's proposed third amended complaint fail as futile, and because Rule 20(a)(2) does not permit joinder of Allstate as a defendant.  Plaintiff has not shown good cause for his belated proffer of a fourth amended complaint and, alternatively, its new claims remain futile.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Substitute Party Defendant (Docket Entry 67) is **GRANTED** and that FIA Card Services, N.A. replace Defendant Bank of America.  The Clerk is directed to modify the Caption of this case to reflect the substitution.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend and Join Allstate as Party Defendant (Docket Entry 68) and Motion to Substitute His Proposed Third Amended Complaint (Docket Entry 73) are **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 26, 2014